No. 25-1426

IN THE

# United States Court of Appeals for the Federal Circuit

MIANYANG BOE OPTOELECTRONICS TECHNOLOGY CO., LTD.;
WUHAN CHINA STAR OPTOELECTRONICS
SEMICONDUCTOR DISPLAY TECHNOLOGY CO., LTD.;
TIANMA MICROELECTRONICS CO. LTD.; VISIONOX TECHNOLOGY, INC.,

*Appellants*,

*v.*

SAMSUNG DISPLAY CO., LTD.,

*Appellee.*

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board No. IPR2023-00941

**REPLY BRIEF OF APPELLANTS MIANYANG BOE OPTOELECTRONICS TECHNOLOGY CO., LTD.; WUHAN CHINA STAR OPTOELECTRONICS SEMICONDUCTOR DISPLAY TECHNOLOGY CO., LTD.; TIANMA MICROELECTRONICS CO. LTD.; AND VISIONOX TECHNOLOGY, INC.**


Travis Jensen
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Xiang Wang
ORRICK, HERRINGTON & SUTCLIFFE LLP
Number 1 Jianguomenwai Avenue
5701 China World Tower A
Beijing, Beijing 100004
People's Republic of China

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

Richard Martinelli
Joseph R. Kolker
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Appellants*

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 3

- I. The Board Erred In Finding That An All-pMOS Modification Was Not Obvious. ........ 3
  - A. The Board erred in rejecting interchangeability of Transistor 3. ........ 4
    - 1. The Board erred in failing to find that Transistor 3 is a switching transistor. ........ 5
    - 2. The Board erred in failing to find it obvious to modify Transistor 3 from nMOS to pMOS. ........ 11
  - B. The Board further erred in rejecting evidence of manufacturing benefits. ........ 21
- II. The Board Erred In Finding That Kimura Does Not Render Obvious The "Shared Control Of Two Transistors." ........ 24
  - A. The Board erred in finding that BOE's petition failed to disclose a complete theory under Kimura's Figure 36. ........ 25
    - 1. BOE's petition relied on Kimura's Figure 36 to meet the shared control limitation. ........ 25
    - 2. The Board erred in finding that BOE's reply relying on Kimura's Figure 36 represented a new direction. ........ 33
  - B. The Board erred in denying BOE's motion to submit supplemental information regarding shared control. ........ 35
- III. The Board Abused Its Discretion In Denying BOE's Motion To Submit Supplemental Information. ........ 37

CONCLUSION ........................................................................................ 39
CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AliveCor, Inc. v. Apple Inc.*,
130 F.4th 1006 (Fed. Cir. 2025) ..... 20

*AMC Multi-Cinema, Inc. v. Fall Line Pats., LLC*,
No. 21-1051, 2021 WL 4470062 (Fed. Cir. Sept. 30, 2021) ..... 36

*Anacor Pharms., Inc. v. Iancu*,
889 F.3d 1372 (Fed. Cir. 2018) ..... 35

*Apple Inc. v. Andrea Elecs. Corp.*,
949 F.3d 697 (Fed. Cir. 2020) ..... 24, 38

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018) ..... 7

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ..... 7, 14

*Bayer Pharma AG v. Watson Lab'ys, Inc.*,
874 F.3d 1316 (Fed. Cir. 2017) ..... 18, 19

*Bratsk Aluminium Smelter v. United States*,
444 F.3d 1369 (Fed. Cir. 2006) ..... 17

*Broekelschen v. Sec'y of Health & Hum. Servs.*,
618 F.3d 1339 (Fed. Cir. 2010) ..... 10

*In re Gal*,
980 F.2d 717 (Fed. Cir. 1992) ..... 18

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ..... 5

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ..... 35

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 4, 5, 8, 12, 20

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
812 F.3d 1284 (Fed. Cir. 2015) .......... 9, 10

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) .......... 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 17

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) .......... 20

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) .......... 7

*Shockwave Med., Inc. v. Cardiovascular Sys., Inc.*,
142 F.4th 1371 (Fed. Cir. 2025) .......... 20

*Uber Techs., Inc. v. X One, Inc.*,
957 F.3d 1334 (Fed. Cir. 2020) .......... 19, 20, 21

*Ultratec, Inc. v. CaptionCall, LLC*,
872 F.3d 1267 (Fed. Cir. 2017) .......... 18

*Voice Tech Corp. v. Unified Pats., LLC*,
110 F.4th 1331 (Fed. Cir. 2024) .......... 34

## INTRODUCTION

Samsung's response confirms that the Board committed both legal and factual errors compelling vacatur. Samsung provides no persuasive response to BOE's showing of error, and instead largely relies on evidence and arguments not cited by the Board and advocates an unduly narrow obviousness standard.

Samsung fails to justify the central finding underpinning the Board's nonobviousness conclusion: that a skilled artisan would not be motivated to make a simple nMOS to pMOS modification to Kimura's Transistor 3.[1] Samsung fails to rebut BOE's showing that the Board failed to consider the relevant evidence at both steps of the analysis: whether Transistor 3 is a switching transistor, and whether it can be modified despite Samsung's assertion of leakage concerns. Samsung instead offers evidence and arguments the Board did not rely on, and fails to show substantial-evidence support for the Board's actual findings.

---

[1] The parties are on common ground: even though not all challenged claims require an all-pMOS circuit, BOE relied on an all-pMOS circuit to show obviousness of all challenged claims, so this issue affects all challenged claims. Samsung baselessly questions BOE's stated motive for this approach, but identifies no "inconsisten[cy]." AB17 n.5.

Samsung similarly fails to vindicate the Board's flawed approach to the "shared control" limitation in claims 1-6 and 13-18. Samsung's response continues to mischaracterize BOE's petition. The Board, led astray by this same argument, erroneously faulted BOE for changing positions (and refused even to consider BOE's explanation showing why this was not so). Here too, vacatur is required. And, if the Court otherwise remands, it should reverse the Board's denial of BOE's attempt to submit supplemental information on the sixth initialization transistor issue affecting claims 2, 8, 16, and 18. Samsung persists in mischaracterizing BOE's position here, as well, and the Court can and should correct the Board's misapprehension.

It is telling that Samsung devotes so much of its counterstatement to an issue not on appeal: supposed secondary indicia of nonobviousness. AB6-8. The Board did not reach this issue and, as BOE will establish on remand, the contention is meritless, including because Samsung cannot establish nexus between its Galaxy Series products and the '599 patent. *See* Appx629-631. Regardless, Samsung's diversions should not distract from the key issues on appeal: Kimura discloses the supposed invention of the '599 patent—a diode-connected

pixel circuit that self-compensates for dispersion in thin-film transistor threshold values. *See* OB1; Appx631-632; Appx2098-2099. And the Board's bases for nonetheless upholding the patentability of the challenged claims are both legally and factually flawed. The Court should vacate and remand.

## ARGUMENT

### I. The Board Erred In Finding That An All-pMOS Modification Was Not Obvious.

BOE demonstrated that the interchangeability of pMOS and nMOS transistors itself provided a reason to substitute Kimura's Transistor 3 with a pMOS transistor. OB20, 43-44. It showed that the Board's contrary finding both lacked substantial evidence and turned on legal error. OB37-55. BOE further demonstrated that manufacturing benefits would have supplied another reason for the modification—a theory the Board erroneously rejected, including by declining to consider BOE's supplemental information on such benefits. OB55-60.

Samsung's response distorts both the record and the law, reading Kimura's interchangeability disclosures in isolation. Repeatedly framing the obviousness inquiry as whether Kimura explicitly "teaches or suggests" a limitation, *see, e.g.*, AB5-6, 9-10, 18-19, 23, Samsung fails

to defend the Board under the proper standard. The obviousness analysis "need not seek out precise teachings" but "can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

### A. The Board erred in rejecting interchangeability of Transistor 3.

BOE showed, and the Board did not disagree, that nMOS and pMOS transistors are generally interchangeable and that this interchangeability would extend to Transistor 3 in Kimura. OB37; Appx23 (noting BOE's showing of general interchangeability); Appx26 (recounting BOE's analysis as to Transistor 3).

The Board, however, rejected interchangeability as to Transistor 3 for two reasons, both of which Samsung fails to rehabilitate: first, that BOE purportedly had not established that Transistor 3 is a switching transistor; and second, that a skilled artisan would not modify its polarity to pMOS because Transistor 3 is supposedly susceptible to leakage concerns. OB38-55.

Samsung defends the Board's finding by insisting that Kimura does not expressly "state or suggest" that Transistor 3 is a "'simple

switching' transistor," nor expressly "stat[e]" a motivation to modify Transistor 3 from nMOS to pMOS. AB18-19. No such express disclosure is required under the law of obviousness. *See KSR*, 550 U.S. at 419. And substantial evidence does not support the Board's findings. *See In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000). The Court should vacate and remand.

**1. The Board erred in failing to find that Transistor 3 is a switching transistor.**

BOE demonstrated that Transistor 3 is a switching transistor and that the Board's summary determination otherwise both violated the APA and lacks substantial evidence. OB38-43. Samsung's response fails to show how the Board complied with the APA. Samsung instead offers reasons the Board did not rely on (because the Board cited no evidence) for concluding that Transistor 3 is not a switching transistor. But none of Samsung's arguments can overcome the fundamental (and undisputed) point for this obviousness analysis: Kimura discloses Transistor 3 as performing an on/off function, which Samsung's expert agreed is the functional definition of a switching transistor. OB42-43 (collecting cites).

**a.** The Board, without citing any evidence, concluded that BOE had not "explain[ed] what makes Transistor 3" a "switching transistor." Appx26; *see* OB39. BOE showed how the Board's summary finding failed to engage with the record evidence. OB38-41. In response, Samsung claims that BOE "[p]uzzlingly" omits three pages of the Board's decision. AB25 (citing Appx27-29). There is no puzzle. The pages Samsung cites do not address whether Transistor 3 is a switching transistor. The Board addressed that topic in a single paragraph that plainly has no citations to evidence. Appx26.

In the pages Samsung cites, the Board went on to address a separate and "[a]lternative[]" finding about whether Transistor 3, if it were a switching transistor, could be made pMOS. Appx27-29. But nothing in those three pages discusses the threshold issue on which the Board (incorrectly) found BOE had failed to provide explanation: whether Kimura's Transistor 3 is a switching transistor. The modification from nMOS to pMOS is the question on which the Board "credit[ed]" Samsung's expert testimony—that is, it was "persuaded" by Dr. Wolfe's explanation regarding leakage considerations in converting from nMOS to pMOS. Appx29 (quoted at AB25). But Samsung fails to

show anywhere the Board considered the competing evidence on the key threshold question; on the contrary, Samsung also jumps straight to discussing modification from nMOS to pMOS. *See* AB25.

The Court should vacate and remand for the Board to address the parties' evidence. *See Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1352-53 (Fed. Cir. 2018).

**b.** Because the Board did not rely on any of the bases Samsung marshals on appeal for why Transistor 3 is supposedly not a switching transistor, this Court cannot consider them in the first instance. *See Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015) (declining to "make factual and discretionary determinations that are for the agency to make") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)).

Regardless, Samsung's factual assertions fail on the merits. Samsung leans heavily on its insistence that Kimura does not "describe[] its alleged Transistor 3 (TFT 3309) as a switching transistor." AB21; *see* AB19, 22 & n.7. But, as BOE already demonstrated, the obviousness standard does not require Kimura to expressly state that any particular transistor in a particular pixel

circuit is a switching transistor. OB42 (collecting authorities). Samsung does not respond to BOE's point and instead embraces this legally flawed express-disclosure requirement. As Samsung's own citations confirm, BOE consistently showed that Kimura describes Transistor 3 operating in an on/off manner, consistent with a switching transistor. *See* Appx1091-1095; Appx1116 (cited at AB22 n.7). Obviousness does not require more. *See KSR*, 550 U.S. at 417.

Samsung also takes a new tack on appeal, arguing that BOE did not establish the premise that Kimura's Transistor 2 is the driving transistor and the remainder are switching transistors. AB19. But both BOE's expert[2] and Samsung's expert testified to this effect. *See* Appx3164; Appx2082 (referring to "the drive transistor" of Kimura Figure 1A); Appx3130; Appx1108. Samsung's expert stated that both the prior art and the '599 patent are directed toward detecting and self-compensating for threshold voltage deviation "in *the* driving transistor." Appx3135 ('599 patent) (emphasis added); Appx3171 (prior art); Appx3130-3131. Samsung also newly argues that Kimura discloses

[2] The Board did not take issue with Dr. Foty's qualifications, as an International Trade Commission ALJ did in another proceeding. *See* AB3 n.2; Appx895.

other circuits with two driver transistors. AB21 n.6. The argument is both forfeited and irrelevant. *See MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1294 n.3 (Fed. Cir. 2015). Whether a circuit *can* have multiple driver transistors does not answer whether the circuit in Figure 33 does. And in the disclosures Samsung references—unlike in Figure 33—Kimura expressly labels the multiple driver transistors, which use a "multi-gate" "connection" that allows a signal to control both transistors. Appx1012 [0672]; *see* Appx1012 [0683].

Samsung is also wrong to suggest that Kimura describes Transistor 3 as a "drive transistor" rather than a switching transistor. AB19, 22 (citing Appx1011 [0654]). No one made this suggestion to the Board. Rather, it was common ground that paragraph 654 of Kimura contains a typographical error when it states, "The TFT 3309 behaves as a driver TFT for performing control of electric current supplied to an EL device 3313 when the TFT 3309 is off." Appx1011 [0654]. It would make no sense to say that Transistor 3 (TFT 3309) behaves as a driving transistor when that very same transistor is "off"—a transistor that is off is not driving anything. BOE's petition characterized paragraph 654

as showing that the "second transistor"—TFT *3308*—behaves as a driver. Appx126.

Samsung did not dispute that characterization. On the contrary, Samsung's expert repeatedly referred to Transistor 2 as "the driving transistor" in Kimura's pixel circuit. *See, e.g.*, Appx3164; Appx3166; OB40. That recognition is consistent with Kimura's labeling of Transistor 2 earlier in its disclosure. Where the "[o]peration" of the transistors "is explained," Kimura describes Transistor 2 (TFT 3308) as the "driver TFT." Appx1011 [0655]-[0657]; *see* Appx104. Samsung's new contention is thus not only forfeited, it also contradicts both Kimura and Samsung's own expert. *See MCM*, 812 F.3d at 1294 n.3 (rejecting contention "not made below"); *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1348 (Fed. Cir. 2010) (rejecting argument where party "contradicts his own expert").

Samsung also suggests that only "*simple* switching transistors" have interchangeable polarities. *E.g.*, AB18 (emphasis added). But Kimura does not distinguish between switching transistors and *simple* switching transistors—nor did the Board find such a distinction. Kimura uses the term "simple switching device" alongside the term

"switching device," as shorthand for explaining that a transistor performing an on/off function serves as a simple switch. *See, e.g.*, Appx993 [0396]; Appx996 [0438]; Appx1010 [0649]; *see also* OB20; Appx99-100; Appx103; OB42-43 (noting Transistors 1 and 3 in Figure 34 turn on and off at the same time, citing Appx1116-1118). Samsung manufactures a distinction where none exists.

#### 2. The Board erred in failing to find it obvious to modify Transistor 3 from nMOS to pMOS.

BOE also showed that a skilled artisan would consider it obvious to modify Transistor 3 from nMOS to pMOS, and that the Board's finding otherwise lacked substantial evidence and reflected procedural and legal error. OB43-55.

Samsung does not rehabilitate the Board's decision. Indeed, Samsung does not address BOE's showing that the Board's leakage finding was refuted by uncontroverted expert testimony. Given that unchallenged showing, and because the Board did not rely on any of Samsung's other arguments against modification, the Court can vacate on this basis alone. § I.A.2.a. But Samsung also does not overcome BOE's showing that the Board improperly ignored material evidence

(§ I.A.2.b) and committed legal error (§ I.A.2.c-d). For all of these reasons, vacatur and remand is appropriate.

**a.** Samsung's response on appeal is largely misdirected: Samsung concedes that Kimura discloses changing the polarity of its transistors but argues that Kimura does not expressly "state" or "suggest" that Transistor 3 *specifically* could be made pMOS. *E.g.*, AB18-19, 23, 27. Again, obviousness does not employ such a myopic approach. *See KSR*, 550 U.S. at 415 (instructing a "expansive and flexible approach"). Kimura expressly contemplates substituting nMOS for pMOS for two other switching transistors in Figure 33, *see* Appx100-101; Appx1011 [0659], and the prior art showed using all-pMOS transistors, *see* Appx606.

Furthermore, Samsung does not dispute that the only reason the Board rejected BOE's proposed modification of Transistor 3 was based on purported leakage concerns. *See* OB45; AB26. Here, Samsung offers no persuasive response to BOE's showing of error.

As it did before the Board, Samsung on appeal leaves unrebutted BOE's showing that the 1997 study supporting Samsung's leakage argument was not applicable to Kimura's transistors. OB46-48;

Appx2198-2202. Samsung instead argues that the Board had other support for its finding, beyond this article. AB29. That is incorrect. Samsung cites several paragraphs of Dr. Wolfe's declaration, most of which do not discuss leakage. *See* Appx3143-3145 ¶¶ 63-68. In the one paragraph that does, Dr. Wolfe relies exclusively on the 1997 article. Appx3143 ¶ 63.

Samsung likewise leaves unrebutted BOE's showing that, even assuming leakage concerns applied to Kimura, they would not discourage a skilled artisan's modification of Transistor 3 from nMOS to pMOS. OB50. And Samsung cannot explain away its expert's concession that "leakage does 'not necessarily' affect pixel brightness 'in a perceptible manner.'" Appx608; *see* OB49-50 (explaining the capacitor is discharged and recharged every cycle, making any leakage imperceptible). Nor does Samsung explain how the '599 patent itself would be enabled if it were true that pMOS transistors raised such significant leakage concerns. OB54.

Instead, Samsung mischaracterizes Dr. Foty's testimony as somehow supporting its leakage argument. AB26, 29-30. It does not. Dr. Foty explained that leakage was present in "older technologies" and

that a skilled artisan could easily "compensate for that by slightly increasing the threshold" voltage of the pMOS transistor. Appx3843; *see* OB49 (citing Appx2198). Samsung has no answer to Dr. Foty's uncontroverted testimony.

Samsung's remaining points cannot provide substantial-evidence support for the Board's erroneous finding that one would not modify Transistor 3 to pMOS, because they relate to arguments the Board did not adopt. Samsung claims that "[t]he Board also found … operational differences for Transistor 3 would have discouraged a POSITA from modifying it to be pMOS." AB26-27. Tellingly, however, Samsung cites nothing in the Board's decision about the size and speed differences it asserts. *See* AB26-27. The Board (after doubting Samsung's showing) relied solely on the flawed leakage theory, making Samsung's arguments improper bases for affirmance. *See Ariosa*, 805 F.3d at 1365; Appx31-32 & n.10; OB31. Regardless, BOE showed why Samsung's size and speed arguments lacked merit. *See* Appx606-607; Appx2193-2196.

Samsung also repeatedly stresses the reduction in signal lines accomplished by a CMOS design—that is, using a combination of nMOS and pMOS transistors. *E.g.*, AB7, 9, 12, 24. But the fact that Kimura

identifies a benefit to CMOS design does not preclude there being other benefits in a single-polarity design. *See Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) ("[A] given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to [modify].").

Next, Samsung has no valid response to BOE's showing based on Kimura's express disclosures that Transistors 1 and 4 in Figure 33 could be either nMOS or pMOS. *See* OB43-44, 49; AB30-31. That disclosure connects Kimura's general point about interchangeability to Figure 33 specifically. *See* OB43-44 (citing Appx100-101; Appx1011 [0659]; Appx1099-1102); OB20-21 (citing other embodiments in Kimura and Kimura '798 as supporting interchangeability in Figure 33). A skilled artisan would have understood that this interchangeability applies equally to Figure 33's Transistor 3. *See* Appx1099-1102. Instead of responding to that point, Samsung incorrectly asserts that Kimura says Transistors 1 and 4 "must" be of *opposite* polarities. AB12, 30-31. Kimura instead says Transistors 1 and 4 "may" be of opposite polarities by using a shared gate line. Appx1011 [0659]. And Samsung's expert conceded that Transistors 1 and 4 could be made of

the same polarity by using separate gate lines. Appx3145-3147. Samsung's argument on appeal therefore misreads Kimura and contradicts its own expert's testimony.

Samsung also completely misstates Kimura when it argues that Kimura "requires" the "fourth" and "fifth" transistors to be of different polarities. The passage Samsung cites refers to the *first* and *fourth* transistors. *Compare* AB9, *with* Appx1011 [0659] (describing TFTs 3306 and 3307, which are Transistors 1 and 4, *see* Appx18). Samsung is wrong, regardless; again, Samsung's expert conceded that Transistors 1 and 4 could be made the same polarity by separate gate lines. Appx3145-3147.

**b.** Samsung also fails to rebut BOE's showing that the Board procedurally erred by impermissibly ignoring material evidence showing that leakage was not a concern. *See* OB45-48.

Samsung claims there was no error because the Board addressed BOE's evidence disproving leakage. AB28. That is not correct. As BOE already showed, the Board expressly found that BOE had not disputed two points—that pMOS transistors present greater leakage concerns, and that this excess leakage current affects brightness—that BOE *had*

in fact disputed. OB45-48; *see* Appx29. The Board may have "directly quoted" BOE's reply argument, AB28, but it did not substantively address it or cite any proper basis for rejecting it.

Contrary to Samsung's cited caselaw, this is not a situation where this Court can assume that the Board implicitly considered the evidence before it. *Contra* AB29. Rather, the Board expressly (and incorrectly) stated that it thought there was no dispute implicating that evidence. Appx29. Nor is BOE trying to force the Board to "play archaeologist with the record." AB29 (alterations adopted). Contrary to Samsung's contention (AB29), BOE clearly raised "concerns" about the 1997 article. BOE's reply explained why leakage was at most "modest" and ultimately "unimportant," and, as support, cited nearly a dozen paragraphs of Dr. Foty's testimony systematically debunking Samsung's argument on leakage and its reliance on the 1997 article. Appx608 (citing Appx2197-2202). The Board did not resolve the dispute. Appx29. As this Court has emphasized, however, an agency must "consider … important aspect[s] of the problem." *Bratsk Aluminium Smelter v. United States*, 444 F.3d 1369, 1373 (Fed. Cir. 2006) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Board's failure to do so here requires vacatur. *See Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267, 1275 (Fed. Cir. 2017).

**c.** Nor does Samsung rebut BOE's showing that the Board legally erred by finding a lack of motivation to modify when BOE demonstrated a "suitable" option. *Bayer Pharma AG v. Watson Lab'ys, Inc.*, 874 F.3d 1316, 1328 (Fed. Cir. 2017); OB51-55. In response to BOE's argument that modifying Transistor 3 to pMOS would have been a "simple design choice," Samsung argues that the "claimed structure and the function it performs are different from the prior art." AB24 (citing *In re Gal*, 980 F.2d 717, 719-20 (Fed. Cir. 1992)). The only differences Samsung identifies, however, are the purported "operational differences" between nMOS and pMOS transistors. And the only "operational differences" Samsung offered are the leakage concern, which is meritless; the size and speed differences that the Board did not reach, *see supra* 14; and the fact that modifying nMOS to pMOS could entail adding gate signal lines. AB24. This is not a case where the "structure" or "function" of the proposed modification differs from the prior art. With or without the proposed modifications, Kimura's transistors function to self-

compensate the driving transistor's threshold voltage deviations, with a structure of five or more transistors—just as the '599 patent discloses. *See* OB6-15; OB22; Appx94-99; Appx1088-1098.

**d.** Samsung likewise has no real response to BOE's argument that obviousness does not require complete "technical equivalenc[e]," only that a modification be "suitable." OB55 (citing *Bayer Pharma*, 874 F.3d at 1328 & n.6). Samsung claims "the Board found material operational differences applicable to Transistor 3," AB31-32, but Samsung identifies no such finding in the Board's decision. To the extent Samsung refers to leakage, that is wrong for all the reasons just discussed. To the extent Samsung suggests that substituting an nMOS transistor for a pMOS transistor would be nonobvious because the substitution would entail straightforward, "additional modifications" to counteract leakage, AB2-3, 30, that too is wrong. Samsung does not dispute that choosing between nMOS or pMOS reflects one of "two known, finite" possibilities for Transistor 3. *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1341 (Fed. Cir. 2020). Samsung's contention that it would nevertheless be nonobvious to choose one of the two options because it could entail ancillary modifications to implement the substitution is the kind of

reasoning this Court has rejected as "circular" and reflecting "legal error." *Id.* at 1340-41 (citing *KSR*).

Obviousness does not require "an actual, physical substitution of elements," much less complete technical equivalency, as Samsung appears to demand here. *In re Mouttet*, 686 F.3d 1322, 1332-33 (Fed. Cir. 2012). Changing the polarity of Transistor 3 would have been a straightforward application of Kimura's teachings. *See AliveCor, Inc. v. Apple Inc.*, 130 F.4th 1006, 1015 (Fed. Cir. 2025) ("To restrict each reference's teachings to the particular way it implements" its claimed invention "would improperly fail to read these references for all that they disclose.").

Accordingly, "[t]he Board's failure to consider the combined teachings of the prior art led it to improperly discount [BOE's] argument in its petition that modifying" Kimura to yield an all-pMOS pixel circuit "would have been a routine design choice." *Shockwave Med., Inc. v. Cardiovascular Sys., Inc.*, 142 F.4th 1371, 1384 (Fed. Cir. 2025) (citing *KSR*, 550 U.S. at 421); *see id.* ("[W]hen there are a limited number of well-known design choices in the prior art it would have been

obvious to substitute one for the other." (citing *Uber*, 957 F.3d at 1338-40)).

The Court should vacate the Board's finding on BOE's all-pMOS showing.

### B. The Board further erred in rejecting evidence of manufacturing benefits.

BOE also showed the manufacturing benefits of an all-pMOS pixel circuit, and the Board's erroneous rejection of this showing provides an additional basis for vacatur. Although Samsung's response criticizes BOE's manufacturing-benefits theory as incomplete, AB35-36, Samsung does not dispute that BOE preserved this argument and that it is properly before this Court. And Samsung fails to overcome BOE's showing that the Board's decision was both unsupported by substantial evidence and infected by the improper exclusion of BOE's supplemental information. OB55-60.

**1.** Samsung first argues that Kimura's "pixel circuits … are manufactured and used together with CMOS driver circuits." AB34. That is simply restating the Board's flawed rationale. The pixel and driver circuits are two different circuits. *See* OB24-25, 56-57; Appx1069-1070. And BOE showed the benefits of an all-pMOS

modification to the pixel circuit, even if it is on the same substrate as a mixed-transistor driver circuit. *See* OB57 (citing Appx2189); Appx84; Appx1054.

Samsung argues that Dr. Foty's "reply declaration discusses purported benefits where all transistors are of the same polarity, not 'where those circuits share a substrate with other, mixed transistor-type circuits.'" AB36 (quoting OB57). But Dr. Foty testified that an all-pMOS modification of the pixel circuit alone would result in manufacturing benefits. Appx2187. Although the Board improperly prevented Dr. Foty from providing further elaboration on why those benefits exist *notwithstanding* Samsung's misguided argument about other circuits on the same substrate, *infra* 22-24, his testimony still explained the benefits of single-species *circuits*. Samsung is also incorrect to claim that "BOE never cited" the "portion of [Dr. Foty's] reply declaration" addressing these benefits. AB36. That passage is clearly cited in BOE's reply to the Board. *See* Appx606 (citing Appx2184-2190).

**2.** Samsung also fails to rehabilitate the Board's improper rejection of BOE's supplemental information, which provided the

detailed rationale responding to Samsung's (and the Board's) objection. OB58-60; *see* Appx364-365; Appx1925-1929. Samsung insists that BOE switched to a "new theory" by explaining why a single-species pixel circuit would yield manufacturing benefits regardless of transistor polarities of the driver circuit. In doing so, Samsung does not even cite BOE's petition. AB37-39. As BOE already showed, Samsung's accusation is incorrect.

The petition demonstrated that a skilled artisan would have understood the benefits of manufacturing pixel circuits with transistors of a single polarity, citing disclosures in Kimura '798 and Dr. Foty's testimony. *See* OB56; Appx84 (citing Appx1054); Appx101; Appx133). When the Board questioned at institution why "Petitioner has not asserted, much less explained the interchangeability of a CMOS pair" in Kimura's separate *driver* circuit, Appx298, the Board revealed a basic misunderstanding of BOE's petition.

BOE's supplemental information sought to clear up the Board's confusion by explaining that BOE was not proposing an all-pMOS modification to the separate driver circuit, which would render that driver circuit inoperable. OB58-60. BOE's supplemental information

first explained how Kimura's disclosures of manufacturing the pixel and control circuitry on the same substrate is not limiting. Appx1923. BOE then explained how the petition showed "manufacturing benefits to be gained by using an all-pMOS pixel circuit," regardless of whether "a CMOS process [is] used to make" the "control circuitry on the same substrate." Appx1926; *see* Appx1921-1929.

BOE's showing was "responsive" to clearing up the Board's misconception of BOE's argument, and the Board abused its discretion in excluding this information. *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 704-07 (Fed. Cir. 2020). Samsung does not cite a single case showing otherwise, nor does it show how BOE's reply theory was somehow new. *Compare* OB60, *with* AB37-39. The Court should vacate and remand on this basis as well.[3]

## II. The Board Erred In Finding That Kimura Does Not Render Obvious The "Shared Control Of Two Transistors."

BOE demonstrated that the Board erred in concluding that Kimura does not render obvious the "shared control of two transistors"

---

[3] Samsung faults BOE for referring to "supplemental evidence" in its appeal brief when it meant "supplemental information," AB37, but Samsung does not dispute that what BOE provided with its motion was supplemental *information*.

limitation present in claims 1-6 and 13-18, with claim 13 being representative. OB32, 60-76. Although BOE's petition expressly "relie[d] on an 'all-PMOS version of Kimura Fig. 36'" for the shared control limitation, the Board faulted BOE's reply for supposedly going in "a new direction" that was "based entirely on Kimura's Figure 36." Appx37-38 (quoting Appx142-143); Appx44-45. That was error, because BOE's petition and reply were consistent.

In response, Samsung insists that BOE's petition relied solely on Figure 33, and claims that BOE's reliance on Figures 33 and 36 would somehow result in "inevitable internal inconsistencies." AB43. Samsung's arguments distort both BOE's petition and Kimura. *Infra* § II.A. For the same reasons, Samsung fails to rehabilitate the Board's error in excluding BOE's supplemental information. *Infra* § II.B.

### A. The Board erred in finding that BOE's petition failed to disclose a complete theory under Kimura's Figure 36.

#### 1. BOE's petition relied on Kimura's Figure 36 to meet the shared control limitation.

BOE's petition expressly relied on Figure 36 to meet the shared control limitation, and BOE has been clear throughout this proceeding that an unmodified "Figure 33 is not compatible with shared control."

OB61; *see* OB62-69; *see* Appx142-145; Appx37-38. Yet Samsung devotes pages to arguing this undisputed point—that the shared control limitation would render *Figure 33* inoperable. AB39, 44-47. That argument is irrelevant.

Samsung's response also continues to misstate (and introduce confusion over) BOE's arguments. Contrary to Samsung's contention (*e.g.*, AB43), BOE has been consistent about its grounds for obviousness: starting with the petition and throughout trial, BOE relied on the same prior-art reference (Kimura) and the same core embodiments within Kimura (Figures 33 and 36). *See, e.g.*, Appx95 & n.3; Appx99; Appx134; Appx142-147. The petition began by addressing independent claim 7, because claim 7 does not contain the "shared control" or "sixth initialization transistor" limitations. *See* Appx103; Appx69. The petition likewise began by analyzing Kimura's Figure 33 as the baseline circuit, because, like claim 7, Figure 33 does not depict shared control or a sixth initialization transistor. *See* Appx95-103. The petition showed how Figure 33 renders claim 7 obvious. Appx103-129.

Building on its baseline showing for Figure 33, BOE then turned to Figure 36 for the shared control limitation, which BOE discussed in

connection with claim 13 (representative of the shared control claims). This approach was consistent with Kimura itself: Kimura first describes the Figure 33 pixel circuit in detail, then describes how Figure 36 adds a sixth transistor to Figure 33. Appx1011 [0665]-[0666] ("A TFT 3612 [a sixth transistor] is therefore added [to Figure 33] as shown in Fig. 36A."); *see* Appx1089-1090; Appx99. The only structural difference between Figures 33 and 36 is this sixth transistor, which allows for shared control of the fourth and fifth transistors as required by certain challenged claims. Appx611-615 & n.8 (sixth transistor is what "enables a shared light-emitting signal"); Appx1143-1145; Appx1161-1163.

But Figures 33 and 36 otherwise share common structure, so most aspects of the Figure 36 embodiment are discussed in detail only in Kimura's description of Figure 33. Kimura does not re-describe these common elements when discussing Figure 36. Appx615-616. Thus, to rely on Figure 36 at all, BOE had to (and did) refer to Kimura's discussion of Figure 33. As BOE's petition expressly stated, "Fig. 36 is merely an extension of Fig. 33 and discussion of one applies equally to the other unless noted." Appx95 n.3; Appx1089. And BOE "noted"

precisely where Figure 36 departed from Figure 33: the addition of the sixth transistor.

Samsung disputes this account of BOE's arguments. In Samsung's telling, BOE's petition relied on Figure 33, then "shift[ed]" to relying on Figure 36 in reply. AB39-44. On this basis, Samsung defends the Board's decision to reject BOE's obviousness challenge to the affected claims because BOE could not show how shared control was consistent with the circuit depicted in Figure 33. AB44-47.

Samsung's theory fails at the outset when it acknowledges that BOE's petition was "clear" that "the baseline Figure 33 circuit could be modified based on the Figure 36 embodiment to implement shared control." AB39. In other words, it was "clear" that BOE was relying on Figure 36. There is no difference between "relying on Figure 36" and "relying on the modification that Figure 36 makes to Figure 33." The only modification BOE was proposing to Figure 33 is the same one Kimura itself makes: the addition of the sixth transistor, which is what allows for shared control in Figure 36 (but not Figure 33). It is unclear why BOE would nonetheless have to show that unmodified Figure 33 *alone* is consistent with shared control.

Furthermore, Samsung's various arguments for why BOE's petition supposedly had some "fatal defect" (AB39) are not persuasive.

For instance, Samsung claims that the petition did not address "material differences" between Figures 33 and 36. AB41 n.8. But Samsung points to none besides those accounted for by the sixth transistor. As BOE explained, apart from shared control enabled by this transistor and the corresponding change to the signal lines, there are *no* "material differences." *See* OB61, 64. Samsung's complaint is difficult to understand: Samsung argues Figure 33 does not contain the shared control limitation, yet argues that Figure 36 (which does) cannot be the basis for BOE's obviousness showing because Figure 36 is different from Figure 33. Yet this is the flawed logic the Board adopted. *See* Appx40 (Board noting unspecified "architecture differences between the embodiments in Kimura's Figures 33 and 36"); *see also* Appx42-43.

Samsung's focus on BOE's characterization of Figure 33 as a "baseline" does not save its critique. *E.g.*, AB2, 4, 8, 39, 41, 52. Kimura also treats Figure 33 as a baseline circuit, then modifies it by adding a sixth transistor to produce Figure 36. Samsung (like the Board) steadfastly ignores that many—but not all—attributes of Figure 36 are

therefore explained in the Figure 33 disclosure. And it cites no authority suggesting that a petitioner cannot discuss a prior-art embodiment in the same way the prior-art reference itself does.

Samsung also notes that BOE relied on Figure 33 for the independent claims from which certain "shared control" claims depend, and argues "BOE never carried back its analysis or attempted to explain how the independent claims would be met by the different circuit of Kimura's Figure 36." AB42. Again, there was no need for BOE to do so. Figure 33's teachings apply to all claims, and Figure 36's modification teaches the sixth transistor required by the claims with shared control. Apart from the shared control limitation, the obviousness analysis was the same for Figure 33 and Figure 36. OB64; *see* Appx95 n.3.

Samsung's convoluted attempts to show that BOE must have been relying on Figure 33 for the "shared control" limitation are meritless. Samsung offers two arguments about claims 2, 8, 16, and 18, each of which requires a sixth initialization transistor. Claims 16 and 18 (but not claims 2 and 8) specify that this transistor must connect directly to the capacitor. *See* Appx129-136; Appx158-160; Appx166; Appx173.

Kimura discloses that exact connection in Figures 16-17. *See* Appx158-160. To meet these common limitations, therefore, BOE's petition proposed modifying Figure 33 by adding the transistor from Figures 16-17 as a sixth transistor to perform initialization. *See* OB23-24; Appx129-136; Appx158-160; Appx166; Appx173.

Samsung makes two related (and equally misguided) arguments as a result: First, Samsung argues that that there would have been "no purpose in BOE's proposed modification" of Figure 33 if BOE was elsewhere relying on Figure 36 for a six-transistor configuration. AB42-43; *see* Appx49-50. Second, Samsung argues that it would be "internal[ly] inconsisten[t]" for BOE to have relied on Figure 33 for claim 16, but on Figure 36 for the "shared control" aspect of claim 15, from which claim 16 depends. AB43, 50-51.

Samsung sows confusion where none should exist. As BOE explained to the Board, modifying Figure 33 by adding the initialization transistor taught in Figures 16-17 results in the functional equivalent of the six-transistor circuit shown in Figure 36. *See* Appx889-890.[4]

[4] Samsung quotes the Board as saying BOE's obviousness position "doesn't compute," AB5, 51 (quoting Appx890), but omits the same

Whether modifying Figure 33 with the transistor from Figures 16-17, or using Kimura's existing modification of Figure 33 as depicted in Figure 36, the same result obtains: Kimura renders obvious the claimed invention. Figure 36 supports BOE's modification of Figure 33, because Figure 36 shows Kimura adding a sixth transistor to Figure 33 for initialization—just in a different location. Appx134; Appx1144-1146. BOE relied on the Figures 16-17 modification where it was important to specify the location of that sixth transistor. *See* Appx158-160; Appx166. Neither Samsung nor the Board provides any reason why this approach was improper or inconsistent. There is certainly no reason to have inferred that BOE, contrary to what its petition said, was relying on Figure 33 (not Figure 36) to show shared control.

Because the Board's ruling was based on its misreading of the petition, vacatur is required, *see* OB65-67—a legal point that Samsung does not dispute. Samsung likewise does not contest the legal principle behind the second error BOE identified—the Board's demand for proof of Figure 33's compatibility with shared control. OB67-69. Samsung

---

judge later saying, "I think I understand," after hearing BOE's explanation, Appx893.

disputes only the interpretation of BOE's petition; it does not dispute that, if the Board misinterpreted the petition, that demand would be legally improper.

### 2. The Board erred in finding that BOE's reply relying on Kimura's Figure 36 represented a new direction.

As BOE showed, the Board could have avoided these errors by looking at the explanation BOE provided in reply after Samsung's response introduced confusion. OB69-73. But the Board erroneously rejected BOE's reply argument as itself "represent[ing] a new direction." Appx45. Samsung insists that BOE did take a "new direction" in its elaboration of Figure 36, AB50-52, but its arguments fail for similar reasons as above.

Samsung contends that BOE's reply introduced new testimony "attempt[ing] to satisfy the shared light-emitting signal claims" by relying on an "extra" transistor—TFT 3612—that Samsung says BOE had not previously relied upon. AB47-48. This is incorrect. TFT 3612 is simply the sixth transistor in Figure 36 that enables shared control. *See* Appx99; Appx1144-1145; *supra* 26-28. BOE's reply explained that this sixth transistor is the "only" difference between Figure 33 and

Figure 36, Appx616-619, and articulated why the rest of the Figure 33 analysis applied equally to Figure 36, *see* Appx95 n.3; *supra* 27-28.

Samsung asserts that TFT 3612 "was neither referenced nor discussed in the Petition or Dr. Foty's original declaration with respect to claim 13." AB48 (quoting Appx406). But BOE's petition provided annotations of Figure 36 showing the sixth transistor, Appx99; Appx146-147, and BOE quoted Kimura's explanation that "[a] [sixth transistor] is therefore added as shown in FIG.36[]." Appx99 (quoting Appx1011 [0666]-[0667]). The bracketed "[sixth transistor]" is TFT 3612. Appx1011 [0666].

Samsung also attempts to excuse the Board's error, noting that the Board rejected BOE's motion to submit supplemental information and "BOE did not move for rehearing." AB47-49. But the Board's separate error in rejecting BOE's motion to submit supplemental information does not justify ignoring BOE's reply showing. *See infra* § II.B. Nor was BOE required to seek rehearing to preserve its challenge (and Samsung does not contend otherwise). *See Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1339 (Fed. Cir. 2024).

Samsung's reliance (at AB50) on *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330 (Fed. Cir. 2019), is thus misplaced. There, the petitioner proposed a "physical substitution" of a sensor taught by a second reference into a primary reference. *Id.* But, following institution, the petitioner sought to broaden its theory to the combination of the two references "more general[ly]," a shift the Board properly rejected. *Id.* By contrast, BOE *did* "identify with particularity the evidence" that supported its obviousness analysis. *Id.*

As this Court has explained, a petitioner does not somehow "adopt[] a new theory of obviousness not presented in the petition" where it advances "the same series of inferences that the petition proposed." *Anacor Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1380 (Fed. Cir. 2018).

### B. The Board erred in denying BOE's motion to submit supplemental information regarding shared control.

BOE also showed that the Board erred in denying BOE's motion to submit supplemental information regarding shared control. OB73-76. BOE's supplemental information elaborated on why Figure 36 is identical to Figure 33 in all respects except for the addition of the sixth transistor that enables the shared control of the fourth and fifth

transistors. Appx361-363; Appx1898-1909. That evidence, like BOE's reply, was directly responsive to both the Board's institution decision and Samsung's arguments.

In response, Samsung quotes the Board as "question[ing] whether the Figure 33 embodiment, after being modified," would still meet the limitations in independent claim 7. AB49-50 (quoting Appx318-319). BOE directly responded to that question in its supplemental information, again explaining that Figures 33 and 36 are the same except for the addition of the sixth transistor, and therefore Figure 33 modified into Figure 36 would still meet the limitations of claim 7. *See* Appx361-363 ("[T]he arrangement and connections of all transistors in Fig. 33 remain unchanged in Fig. 36"); Appx2209-2211 ("As can be seen in the side-by-side comparison below [of Figures 33 and 36], transistors one, two, three, four, and five operate identically.").

Even absent an express invitation from the Board, BOE was entitled to provide "supplement[ation]" that "fairly adds confirmation [to] … initially presented material." *AMC Multi-Cinema, Inc. v. Fall Line Pats., LLC*, No. 21-1051, 2021 WL 4470062, at *6, *8 (Fed. Cir. Sept. 30, 2021); *see* OB75-76. Samsung does not disagree that BOE's

supplemental information was responsive to the Board's institution decision and Samsung's arguments; it merely says BOE took a "new direction," AB50, which is wrong for the reasons already explained. *Supra* 33-35.

## III. The Board Abused Its Discretion In Denying BOE's Motion To Submit Supplemental Information.

BOE showed that the Board abused its discretion in excluding additional evidence on the sixth initialization transistor issue, and why the Court should reverse that exclusion if it remands to the Board. OB76-79. Although Samsung continues to mischaracterize BOE as conflating Kimura's erasure and initialization periods, as Samsung ultimately admits, BOE simply treated them as "analogous," not identical. AB56; *see* OB77-78.

Consistent with its approach of treating erasure and initialization as analogous, BOE's petition referred to Kimura's erasure and initialization interchangeably. It made sense to do so, because Kimura discloses that initialization happens at the same time as erasure (as Samsung's expert conceded, *see* Appx625-627), and both periods discharge the storage capacitor. *See* Appx619-628; Appx2219-2220.

They are thus equivalent for purposes of BOE's obviousness showing. *See* Appx129-136; Appx1140-1150; Appx2213-2230.

When Samsung sought to draw distinctions without a difference, *see* Appx205-209, BOE appropriately moved to supplement and elaborate on why Kimura's initialization and erasure are analogous, *see* Appx363-364; Appx1910-1916. Because Samsung cannot reasonably dispute that BOE's supplemental information were directly responsive, this Court should reverse the Board's denial of BOE's motion. *Apple*, 949 F.3d at 704-07.

Samsung pivots to disputing BOE's obviousness showing on the merits, but its argument is premature (because the Board did not reach that issue) and factually incorrect. AB59-60. Samsung contends that BOE's proposed sixth transistor in Figure 33 would not "cut off" electric current to the LED. AB59-60. But it is undisputed that Kimura discloses placing the erasure transistor in a location that does not "cut off" current to the LED. Appx624-625; Appx2221-2222.

Should the Court remand, it should correct the Board's error.

## CONCLUSION

The Court should vacate and remand.

September 19, 2025

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Melanie L. Bostwick
Jonas Q. Wang
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

Travis Jensen
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Xiang Wang
ORRICK, HERRINGTON & SUTCLIFFE LLP
Number 1 Jianguomenwai Avenue
5701 China World Tower A
Beijing, Beijing 100004
People's Republic of China

Richard Martinelli
Joseph R. Kolker
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 6,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Appellants*